IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARTHA RUTHANN HARTSOCK       )
                              )
                Plaintiff,    )    Civil Action No. 13-1571
                              )
        v.                    )
                              )
CAROLYN W. COLVIN,            )
ACTING COMMISSIONER OF        )
SOCIAL SECURITY,              )
                              )
                Defendant.    )

## OPINION

### I. *Introduction*

Pending before this Court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the claims of Martha Ruthann Hartsock ("Plaintiff" or "Claimant") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381 et. seq. (2012). Plaintiff argues that the decision of the administrative law judge ("ALJ") should be reversed or remanded because the ALJ's residual functional capacity ("RFC") determination failed to include all of the Claimant's limitations and was not supported by substantial evidence as required by 42 U.S.C. § 405(g).

To the contrary, Defendant argues that the evidence of record established functional limitations and identified representative occupations which showed Claimant could perform in a gainful occupation despite her limitations and, therefore, the ALJ's decision should be affirmed. The parties have filed cross motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

For the reasons stated below, the Court will deny the Defendant's Motion for Summary Judgment in part and grant the Defendant's Motion for Summary Judgment in part affirming the decision of the ALJ with regard to Plaintiff's claim for physical disability. In turn, the Court will deny the Plaintiff's Motion for Summary Judgment in part and grant Plaintiff's Summary Judgment in part with regard to Plaintiff's claim of mental disability.

## II. Procedural History

On September 19, 2010, Plaintiff protectively filed an application for SSI alleging disability beginning September 16, 2010 (R. at 18). The claim was initially denied on March 2, 2011 (R. at 18). On April 22, 2011, Claimant filed a written request for a hearing (R. at 18). A hearing was held before an Administrative Law Judge ("ALJ") on May 1, 2012 (R. at 18). Eugene A. Czuezman, an impartial vocational expert ("VE"), also appeared during the hearing (R. at 18). On May 9, 2012, the ALJ, Karen B. Kostol, determined that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act (R. at 27). The ALJ stated that, "Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 27). On May 9, 2012 Plaintiff submitted a timely written request for review by the Appeals Council which was denied on September 11, 2013 (R. at 1-3), thus making the Commissioner's decision final under 42 U.S.C. § 405(g).

## III. Medical History

Plaintiff's is 5'3" tall and weighs 230 pounds (R. at 22). The ALJ found the Claimant to have the following severe impairments: (1) Major depressive disorder; (2) panic disorder with features of agoraphobia; (3) post-traumatic stress disorder ("PTSD"); (4) degenerative disc

2

disease of the lumbar spine with mild radiculopathy; (5) obesity; (6) hypertension; and (7) headaches (R. at 20). Dr. Walter Bobak is Plaintiff's primary care physician who prescribes the following medications for Plaintiff's conditions: 50 mg of atenolol for high blood pressure, vitamin B for a deficiency, Zoloft for depression (R. at 133), cyclobenzaprine and gabapentin for dry mouth, mirtazapine for sleep, ome prazole for stomach problems, sertraline for dizziness and nausea, and topiramate for headaches (R. at 151). Plaintiff reported taking 800 mg of Motrin every 8 hours and 500 mg of Naproxen as needed for pain (R. at 145). Plaintiff reported being under the care of Dr. Sally of Fayette Podiatry where she receives cortisone shots (R. at 134), Lee Goddich, DC for physical therapy, and psychiatrist Dr. Shahoud Geith, MD.[1]

On May 5, 2010 Dr. Bobak performed a Thyroid exam. Impressions were a diffusely enlarged heterogeneous thyroid gland with nodules in each lobe of the thyroid but there were no significant changes from previous exam. Further, we saw no information connecting a thyroid condition with Plaintiff's claims of disability.

On October 13, 2010 Plaintiff went to National Pike Chiropractic and reported severe low back pain and neck pain as well as swelling. She rated the pain a 9/10 and said she has the pain all of the time (R. at 160). She also reported headaches that start at the back of her neck and travel up the back of her head (R. at 161). There were no further chiropractic reports.

On December 16, 2010 Dr. Raymond Nino completed a consultative examination report and found that Plaintiff could occasionally lift and/or carry 2-3 pounds due to low back pain (R. at 163). His further findings were that Plaintiff could only ambulate for less than 200 feet without stopping and reported she only had the capacity to stand or walk for an hour or less in an 8-hour day (R. at 163). His report stated she could sit less than 6 hours a day or she could sit for

---

[1] There are no discernable reports on the record for physical therapy or podiatry, nor are there any reports for therapy sessions with Dr. Geith.

8 hours a day alternating sit and stand positions (R. at 163). She is limited in lower extremity to push and pull 30 pounds (R. at 163). He reported she can frequently bend, kneel and balance, occasionally stoop, crouch, and climb (R. at 164). Dr. Nino also restricted Plaintiff from heights, moving machinery, vibration, and temperature extremes (R. at 164).

On December 20, 2010 Dr. Nino performed a general medical exam as requested by the Bureau of Disability. Dr. Nino reported Plaintiff to have a generally normal exam. Even though Plaintiff reported stiffness and chronic pain in her lower back he found no swelling or atrophy referable to her spine (R. at 168). Her neck and neurological exam were normal (R. at 169). Plaintiff's reflexes were intact and she was able to get on and off the exam table without difficulty, could rise from a chair without difficulty, and could stoop and rise with pain (R. at 169). Plaintiff's stance and gait were normal (R. at 169).

On January 13, 2011 John Carosso, Psy.D reviewed records provided by the Disability Bureau, conducted a clinical interview of the Plaintiff, and administered a mini mental state exam and a Sheehan work disability work scale. Dr. Carosso made the following observations regarding Plaintiff's mental capabilities: She had moderate restrictions in understanding and remembering short simple instructions, she had marked restrictions in carrying out short simple instructions and making judgments on work-related decisions, she had extreme restrictions in understanding, remembering, and carrying out detailed instructions (R. at 171). Dr. Carosso also reported Plaintiff to have moderate limitations in her ability to interact appropriately with co-workers, marked limitations in her ability to interact appropriately with supervisors, and extreme limitations in her ability to interact appropriately with the public as well as her ability to respond to work pressures in a work setting (R. at 171). He attributed these restrictions to her depression (R.at 171). In summary he stated,

4

There is evidence of lack of attention to-task and poor concentration as per the Mini-Mental State Exam-2 results. Ms. Hartsock, however, presents as relatively intelligent and capable of understanding, retaining, and following instructions but her ability to do so on a consistent and reliable basis is likely limited. In that regard, she has difficulty with attention to-task and becomes easily overwhelmed with subsequent avoidant behaviors. She has problems relating to others without panic episodes and, for example, she needs her daughter to take her to the store. (R.at 177)

Dr. Carosso gave Plaintiff a prognosis of guarded (R. at 177). He provided a diagnosis of Major Depressive Disorder, Moderate to Severe, Panic Disorder with Agoraphobia, Generalized Anxiety Disorder, PTSD, Foot Pain, Back Pain, Headaches (R. at 177). He gave her a Global Assessment Functioning Score of 50 (R. at 177).[2]

On January 18, 2011 Plaintiff attended an appointment with Neurologist, Shobha Asthana, M.D. complaining of headaches. Plaintiff reported chills, headache, dizziness, eye pain, and blurred vision (R. at 178). Dr. Asthana prescribed Topiramate and ordered blood work and an MRI (R. at 179).

On January 19, 2011 a US Venous Doppler Lower Right Extremity was performed by Dr. Sunjeev Katyal due to Plaintiff's lower extremity edema and pain. Dr. Katyal found the right common femoral and popliteal veins demonstrated normal compressibility, normal phasic venous flow, and normal response to augmentation. There was no evidence for echogenic thrombi. Furthermore, there was no evidence for deep venous thrombus from the right common femoral to the popliteal vein (R. at 226).

On February 2, 2011 an MRI of Plaintiff's brain was performed due to headaches and history of hypertension. No abnormalities were detected (R. at 240). On this same date an MRI

---

[2] The GAF scale, devised by the American Psychiatric Association, ranges from zero to one hundred and is used by a clinician to indicate an overall judgment of a person's psychological, social, and occupational functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R). The greater the number the higher the functioning of the individual.

of the lumbar spine was performed. The study showed a moderate degeneration of the L4-L5 and L5-S1 discs with mild central spinal stenosis noted at the L5-S1 level with some compromise of the neural foramina at this level (R. at 241).

On February 12, 2011 Dr. Mark Brown performed a CT Head scan without contrast on Plaintiff. The reason for the exam was trauma/vertigo (R. at 220). The results of the test were normal and unremarkable (R. at 220).

On March 9, 2011 Plaintiff attended an initial therapy session with therapist Elizabeth Smith ("Smith") due to depression and anxiety. Smith found Plaintiff to have a flat affect and found her mood to be depressed and anxious. Plaintiff had a guarded posture with good eye contact and a rational thought pattern (R. at 276).

April 15, 2011 Plaintiff had a follow visit with Dr. Asthana with her chief complaint of headaches. The headaches began in the frontal area and radiate backwards so the pain is also in her neck and her hands are going numb at times (R. at 231). Dr. Asthana's review of Plaintiff's MRI of the brain was normal and the MRI of the lumbar spine showed moderate degeneration of the L4-5, L5-S1 with moderate stenosis L5-S1 (R. at 231). Dr. Asthana prescribed Neurontin and Flexeril and ordered an EMG/NCV of the legs and an MRI of the cervical spine (R. at 232-33).

On June 21, 2011 an Electromyography Report was issued for Plaintiff's right leg pain. A nerve conduction study of the right lower extremity was performed using surface electrodes. Plaintiff's sensory responses were normal, however the extensive EMG/Nerve conduction study of the right lower extremity was consistent with mild L4 and L5 radiculopathy (R. at 230).

June 26, 2011 Plaintiff attended a therapy session with Smith. Plaintiff was observed to be anxious, hyper vigilant and dysphoric, yet engaged and responsive. She was oriented x3 with average grooming and a facial tick near mouth (R. at 265).

Subsequent to the two appointments with Smith mentioned above, Plaintiff demonstrated a history of missed appointments and she was told that her medications would not be renewed unless she attended follow up appointments (See e.g. R. at 254, 256, 257, 262).

On October 4, 2011 Plaintiff saw Dr. Asthana for a follow up visit because her pain had been increasing in the right sided hip area and radiated to her right leg (R. at 229). She reported a decrease in headaches to one a day lasting for 30 minutes (R. at 229). Dr. Asthana refilled 300 mg of Neurontin and 10 mg of Flexeril (R. at 229).

Plaintiff was admitted to Uniontown Hospital for reported chest pains and kept for observation from April 3, 2012 to April 6, 2012 (R. at 286-303). On April 3, 2012 a XR portable chest 1V and CTA of the chest with and without contrast was performed. On April 5, 2012 an NM Myocardia SPECT Stress/Rest Cardio exam was performed. On April 5, 2012 Dr. Muhammad Raza reported that Plaintiff was found to have a small anterior wall ischemia on her nuclear stress test (R. at 290). Dr. Raza recommended cardiac catheterization (R. at 290). On April 6, 2012 Plaintiff underwent left heart catheterization, selective left coronary angiogram and selective right coronary angiogram (R. at 292). Plaintiff was discharged.

### IV. Summary of Testimony

The Claimant prepared a function report in which she alleged difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, remembering, and concentrating (R. at 22). She reported constant neck and back pain (R. at 22). She claimed her

7

depression causes her to be forgetful and that her headaches cause difficulty seeing (R. at 22). She stated she can only walk for 30 minutes at a time (R. at 22). She reported difficulty in handling stress and changes in routine (R. at 22). At the hearing she added that she experienced headaches lasting two hours, difficulty grasping with her left arm, problems with her feet, and one or two panic attacks per month (R. at 23). Plaintiff reported the last time she worked was at a summer program in 1978 as a laborer (R. at 131).

Plaintiff lives with her daughter and her daughter takes care of their dog and rabbit (R. at 137). Plaintiff's daughter also reminds Plaintiff to take her medicines when she forgets (R. at 138). In her Disability Report Plaintiff's description of her daily activities are as follows:

> Make coffee watch TV maybe if feel OK with no headache maybe a few dishes and maybe help daughter with meals of easy meals than lay down mostly because my back and head has been real bad than change and go to bed for the night. (R. at 136).

Plaintiff further reported she goes outside a couple of times a day but only drives on occasion when her daughter is with her (R. at 139). She also reports that she is not able to pay bills because she forgets but can handle her own bank account (R. at 139). Plaintiff repeatedly stated she is constantly in pain and medications are not effective.

On February 2, 2011 a Mental RFC was performed by Arlene Rattan, Ph.D. (R. at 181-184). Dr. Rattan found Plaintiff to be markedly limited in her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, and her ability to interact appropriately with the general public. Plaintiff's Functional Limitations such as activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace were all moderate (R. at 195). Any other limitations noted by Dr. Rattan were rated as moderate to not significantly limited. Dr. Rattan

8

states, "Based on the evidence of record, the claimant's statements are found to be partially credible." (R. at 183)

> She can perform, simple, routine, repetitive work in a stable environment. She can make simple decisions. She can sustain an ordinary routine without special supervision. Moreover, she evidences some limitation in dealing with work stresses and public contact. Review of the medical evidence reveals that the claimant retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks. (R. at 183).

Dr. Rattan notes that she reviewed Dr. Carosso's report but states that his report is inconsistent with the totality of the evidence in the Plaintiff's file (R. at 183) and feels he relied heavily on the subjective statements of Plaintiff. Because of the inconsistences between Dr. Carosso's report and the evidence of record Dr. Rattan found his report less persuasive and she cannot give it great weight (R. at 183).

On March 2, 2011 Gail Sekas, M.D. performed a Physical RFC on Plaintiff (R. at 198-204). The primary diagnosis was Lumbago and secondary diagnoses were headaches, obesity, and hypertension (R. at 198). Dr. Sekas found Plaintiff to have the following limitations: (1) occasionally can lift or carry 20 pounds; (2) frequently lift or carry 10 pounds; (3) stand and/or walk for 6 hours in an 8 hour day; (4) sit for 6 hours in an 8-hour work day; (5) push and pull were unlimited; (6) occasionally climb, balance, stoop; (7) never kneel, crouch, or crawl (R. at 199-200). Finally, it was determined that Plaintiff should avoid exposure to extreme cold or heat, vibration, and hazards (R. at 201).

Dr. Sekas found Plaintiff to be partially credible based on Plaintiff's medical history, the character of her symptoms, the type of treatment she has received and her response to the treatment (R. at 204). Dr. Sekas noted treatment thus far has been conservative. Plaintiff does not use a Tens unit or ambulatory device. She does not attend physical

9

therapy. She has not been prescribed narcotic medication for her pain (R. at 204). Further, Dr. Sekas reports that Dr. Nino overestimated the severity of Plaintiff's symptoms and determines his findings to be inconsistent with the Plaintiff's medical record as a whole (R. at 204). As a result Dr. Sekas gave Dr. Nino's report "appropriate" weight (R. at 204).

The ALJ presented to the Vocational Expert the following limitations for consideration:

> I would ask that you assume an individual with the same age, education and past work experience as the claimant with the following abilities: That individual is capable of light exertional level work. Said individual can . . . occasionally climb ramps or stairs, balance, stoop, never crouch, never kneel and never crawl. Said individual must avoid concentrated exposure to extreme cold, extreme heat, excessive vibration and concentrated exposure to all hazards such as moving machinery and undetected heights. Said individual is limited to work which is simple, routine and repetitive in nature. The work must be in an environment free of fast paced production requirements involving only simple work related decisions with few if any workplace changes. Said individual is capable of occasional interaction with the general public, co-workers and supervisors. Is there work for this individual? (R. at 65).

The VE suggested that Plaintiff can work as a plumbing hardware assembler, cleaner/polisher, or assembler/printed products (R. at 65). When the ALJ added more possible restrictions commensurate with Plaintiff's medical history to the scenario the VE responded with other job options available in the economy (R. at 65-67). When ALJ asked if such an individual with all limitations posed would also be off-task or likely to miss work 20 percent of the time, the VE responded that such a hypothetical person would not be capable of performing any type of work if she was off-task more than 10 percent of the time (R. at 67-68).

It is Plaintiff's position that the ALJ's determination regarding Plaintiff's ability to work in occupations with jobs existing in significant numbers in the national economy did not take into consideration all of Plaintiff's limitations and was not supported by substantial evidence [ECF

No. 9 at 5]. Namely, that the ALJ did not take into account the "marked" limitations noted by the expert examining psychologist, Dr. Carosso appointed by the Disability Bureau [ECF No. 9 at 9]. Plaintiff states, "[T]here is a requisite assumption that the opinions of treating physicians are entitled to greater weight than the opinions of examining and non-examining physicians, and that the opinions of examining physicians are entitled to greater weight than the opinions of non-examining physicians." [ECF No. 9 at 7-8; see fn 21 (citations omitted)].

*V. Standard of Review*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. See 42 U.S.C. § 405(g)(2012). This Court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. See id. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. See id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706(1)(F) (2012).

## VI. Discussion

Under SSA, the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ..." 42 U.S.C. §§ 416(i)(l); 423(d)(1)(A); 20 C.F.R. § 404.1505 (2012). A person is unable to engage in substantial activity when:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled under SSA, a five-step sequential evaluation process must be applied. See 20 C.F.R. § 404.1520; McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows: At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i). At step two, the Commissioner must determine whether the claimant has a severe impairment. See id. at § 404.1520(a)(4)(ii). If the Commissioner determines that the claimant has a severe impairment, she must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, subpart p, Appx. 1. § 404.1520(a)(4)(iii). If the claimant does not have an impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent her from performing her past relevant work. See id. at § 404.1520(a)(4)(iv). If so, the Commissioner must determine, at step five, whether the claimant

can perform other work which exists in the national economy, considering her residual functional capacity and age, education and work experience. See id. at § 404.1520(a)(4)(v); see also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). In this case, the Commissioner uses the sequential evaluation process and determines at step (5) that the Plaintiff has not met her burden of proof that she cannot work in some capacity in the national economy. Therefore, because the Plaintiff was determined able to perform work that exists in significant numbers in the national economy, she was determined ineligible for benefits by the ALJ (R. at 30).

Plaintiff bears the burden of proving that her RFC or limitations are that which do not allow for any work in the national economy. See Heckler v. Campbell, 461 U.S. 458, 460 (1983); Matthews v. Eldridge, 424 U.S. 319, 336 (1976). Moreover, the ALJ is not required to uncritically accept Plaintiff's complaints. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011). The ALJ, as fact finder, has the sole responsibility to weigh a claimant's complaints about her symptoms against the record as a whole. See 20 C.F.R. §§ 404.1529(a), 416.929(a).

### a. *Physical Disability*

With regard to Plaintiff's physical impairments, we find that the evidence of record does not support a finding that Plaintiff is disabled under SSA. Plaintiff has a history of low back pain and headaches. An MRI of the lumbar spine on the record indicates that Plaintiff's back pain may be attributable to a moderate degeneration of the L4-L5 and L5-S1 discs with mild central spinal stenosis noted at the L5-S1 level with some compromise of the neural foramina (R. at 240). Likewise, nerve conduction studies revealed mild L4 and L5 radiculopathy (R. at 230).

An MRI of the brain with regard to Plaintiff's chronic headaches found no abnormalities (R. at 240).

Dr. Nino performed a consultative report and found Plaintiff to have some limitations in areas of physical ability. His most severe restrictions were that Plaintiff could occasionally lift and/or carry 2-3 pounds due to low back pain (R. at 163); Plaintiff could only ambulate for less than 200 feet without stopping and reported she only had the capacity to stand or walk for an hour or less in an 8-hour day (R. at 163); and Plaintiff could sit less than 6 hours a day or she could sit for 8 hours a day alternating sit and stand positions (R. at 163). However, Dr. Nino also performed a physical examination of Plaintiff and reported a generally normal exam with the exception that Plaintiff could not stoop and rise without pain (R. at 169).

Dr. Sekas, in the Physical RFC, found Plaintiff to have the following limitations: (1) occasionally can lift or carry 20 pounds; (2) frequently lift or carry 10 pounds; (3) stand and/or walk for 6 hours in an 8 hour day; (4) sit for 6 hours in an 8-hour work day; (5) push and pull were unlimited; (6) occasionally climb, balance, stoop; (7) never kneel, crouch, or crawl (R. at 199-200). These limitations take into account Plaintiff's diagnosis of moderate degeneration of L4 and L5, however, are less restrictive than Dr. Nino's limitations. Furthermore, Dr. Sekas stated Dr. Nino's findings and statement of limitations for Plaintiff were inconsistent with Plaintiff's medical record. Plaintiff's treatment for her medical ailments thus far has been conservative indicating that her physical impairments are not as severe as Dr. Nino's report indicates. In fact, Dr. Nino's physical examination does not even support his limitations for Plaintiff.

Given the limitations set forth in the RFC, which the ALJ presented to the VE at the hearing, the VE was able to list numerous job options in the economy existing in significant

numbers for which the Plaintiff was qualified despite her physical limitations. Therefore, we find that the Plaintiff has not met her burden of proving that she has a physical impairment that is so severe that it prevents her from performing any work.

### b. *Mental Disability*

With regard to Plaintiff's mental disability we find the record scant with medical evidence. Unfortunately, Plaintiff has a historical record of absenteeism for her scheduled therapy sessions, which leaves the Court with little medical evidence of Plaintiff's mental diagnoses of: (1) Major depressive disorder; (2) panic disorder with features of agoraphobia; and (3) PTSD.

On the record there are a few appointments with Therapist Elizabeth Smith, which note a depressed affect in Plaintiff. The most significant mental report on the record is a report by John Carosso, Psy.D. Dr. Carosso conducted a clinical interview of the Plaintiff, and administered a mini mental state exam and a Sheehan work disability work scale. Dr. Carosso made several observations regarding Plaintiff, the most notable observations were moderate restrictions in understanding and remembering short simple instructions, marked restrictions in carrying out short simple instructions and making judgments on work-related decisions, and extreme restrictions in understanding, remembering, and carrying out detailed instructions (R. at 171). Dr. Carosso also reported Plaintiff to have moderate limitations in her ability to interact appropriately with co-workers, marked limitations in her ability to interact appropriately with supervisors, and extreme limitations in her ability to interact appropriately with the public as well as her ability to respond to work pressures in a work setting (R. at 171).

Dr. Rattan, in her Mental RFC found Plaintiff to be markedly limited in her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, and her ability to interact appropriately with the general public. However, overall, Dr. Rattan's

limitations are much less restrictive than Dr. Carosso's limitations. Dr. Rattan states that Dr. Carosso's report is inconsistent with the totality of the evidence in the Plaintiff's file (R. at 183) and feels he relied heavily on the subjective statements of Plaintiff.

As stated above, we do not see an overwhelming amount of evidence on the record with regard to Plaintiff's mental capacity, therefore, it is difficult for us to concur that Dr. Carosso's report does not agree with the totality of the evidence. In fact, Dr. Carosso's report, with Dr. Carosso as an examining physician, provides some of the most reliable evidence on record. Furthermore, there is some agreement among the three reporting experts, Therapist Smith, Dr. Carosso, and Dr. Rattan, who comprise all the mental medical evidence of record. All the reporting experts noted depression and a markedly limited ability to understand, remember, and carry out detailed instructions. Plaintiff herself indicated her depression causes her to be forgetful (R. at 22). However, despite Dr. Rattan's finding that Plaintiff has markedly limited abilities in her mental capacities, Dr. Rattan concluded that Plaintiff could meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments (R. at 184). This conclusion is contrary to previous statements by Dr. Carosso and Dr. Rattan.

With regard to Plaintiff's mental capacity, it is possible that she has met "paragraph B" criteria. To satisfy this criterion Plaintiff's mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

Finally, we refer to the transcript of the hearing in which the ALJ inquires of the VE,

> [I]f an individual would not be able to sustain sufficient concentration for the (INAUDIBLE) it takes to do these simple routine tasks on a regular and

continuing basis, and would likely be off task or miss work approximately 20 percent of the work week, would there be jobs available for this individual?

[ANSWER] Such hypothetical person would not be capable of performing any type of work. (R. at 67).

Based on our analysis above, we don't believe that that Dr. Rattan's conclusory determination that Plaintiff can meet the demands of competitive work is supported by substantial evidence of record and we will reverse the decision of the ALJ.

*VII. Conclusion*

For the foregoing reasons, we conclude that there is substantial evidence supporting the determination that Plaintiff is not physically disabled. Therefore, with regard to Plaintiff's claim of physical disability, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted.

However, in contrast, we conclude there is not substantial evidence existing in the record to support the Commissioner's decision that Plaintiff is not disabled with regard to her claim of mental disability and, therefore, the Defendant's Motion for Summary Judgment with regard to the Plaintiff's claim of mental disability is denied. The Plaintiff's Motion for Summary Judgment is granted with regard to Plaintiff's claim of mental disability and the determination of the Commissioner is reversed.

An appropriate order will be entered.

Date: July 10, 2014

Maurice B. Cohill, Jr.
Senior United States District Court Judge

cc: counsel of record